# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

DANIEL ZAGORIA, *on behalf of himself and all others similarly situated*,

                  Plaintiff,

    -against-

NEW YORK UNIVERSITY,

                  Defendant.

------------------------------------x

<u>MEMORANDUM DECISION AND ORDER</u>

20 Civ. 3610 (GBD) (SLC)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #
DATE FILED: MAR 17 2021

GEORGE B. DANIELS, United States District Judge:

Plaintiff Daniel Zagoria, on behalf of himself and all others similarly situated, brings this putative class action against Defendant New York University ("NYU"), for breach of contract, unjust enrichment, and money had and received. (*See* Compl., ECF No. 1, ¶ 1.) Specifically, Plaintiff seeks a refund of tuition and fees in connection with NYU's decision to move all classes to remote learning in response to the COVID-19 pandemic. NYU moves to dismiss Plaintiff's class action complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Notice of Mot. to Dismiss, ECF No. 29.) NYU's motion to dismiss is GRANTED.

## I. FACTUAL BACKGROUND

At the outset of this litigation, Plaintiff was a graduate student enrolled in NYU's Schack Institute of Real Estate. (Compl. ¶ 6.) During the 2019-2020 academic year, NYU provided higher education to over 50,000 students enrolled in undergraduate and graduate degree programs. (Compl. ¶ 7.) On March 16, 2020, the COVID-19 pandemic caused NYU to suspend "all on-campus in-classroom instruction" and move "all instruction to remote online media." (*Id.* ¶ 1.)

According to Plaintiff, "online education devoid of campus interaction and facilities plainly is not equivalent in nature or value to the traditional in-classroom on-campus education for which

NYU students matriculated and paid." (Compl. ¶ 25.) Yet, NYU continues to require students to pay full tuition and certain fees.[1] (*Id.* ¶ 2.) Moreover, because classes have continued remotely, NYU has declined to provide tuition reimbursement on the basis of instruction transitioning to a remote format. (Compl. ¶ 21.)

Plaintiff thus brings this action seeking "redress for NYU's failure to provide any in-person campus instruction or [access to] campus facilities while continuing to charge full tuition and fees." (Compl. ¶ 32.) Plaintiff also seeks to represent a class consisting of "similarly situated students enrolled at NYU in any future summer session or semester in which NYU does not provide access to its campus facilities or on-campus instruction" but "continues to charge full tuition and fees without proration." (*Id.* ¶ 27.) Plaintiff seeks a tuition refund. (*Id.* ¶ 47.)

NYU now moves to dismiss arguing, among other things, that the educational malpractice doctrine bars Plaintiff's claims, that Plaintiff fails to allege a specific promise for in-person instruction, and that Plaintiff fails to properly plead his unjust enrichment and money had and received claims.

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must demonstrate "more than a sheer possibility that a defendant has acted unlawfully;" stating a facially

---

[1] The Complaint alleges that NYU failed to refund various fees, (Compl. ¶ 2), but also acknowledges that some fees associated with course-related travel were refunded to Plaintiff. (Compl. ¶ 13.) NYU represents that they "refunded a *pro rata* amount for the costs of housing and dining services after the campus' closure." (Mem. of Law in Supp. of Def.'s Motion to Dismiss ("Def. MTD Mem."), ECF No. 30, at 5.) Additionally, "NYU's various schools also refunded certain activity fees, following evaluation of 'dozens of individual school and course-based fees for the purpose of determining potential refunds, which are based on whether or not students received all or part of the services, supplies, or equipment associated with the fee.'" (*Id.*)

2

plausible claim requires the plaintiff to plead facts that enable the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The factual allegations pled must therefore "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).[2]

A district court must first review a plaintiff's complaint to identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The court then considers whether the plaintiff's remaining well-pleaded factual allegations, assumed to be true, "plausibly give rise to an entitlement to relief." *Id.*; *see also Targum v. Citrin Cooperman & Co., LLP*, No. 12 Civ. 6909 (SAS), 2013 WL 6087400, at *3 (S.D.N.Y. Nov. 19, 2013). In deciding the 12(b)(6) motion, the court must also draw all reasonable inferences in the non-moving party's favor. *See N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 709 F.3d 109, 119–20 (2d Cir. 2013).

## III. THE EDUCATIONAL MALPRACTICE DOCTRINE DOES NOT BAR PLAINTIFF'S CLAIMS

As a threshold matter, Defendant raises the prospect that Plaintiff's claims are barred by the educational malpractice doctrine. (Mem. of Law in Supp. of Def.'s Motion to Dismiss ("Def. MTD Mem."), ECF No. 30, at 7–9.) The educational malpractice doctrine precludes courts from adjudicating claims regarding the sufficiency or quality of education provided by educational intuitions. *Donohue v. Copiague Union Free Sch. Dist.*, 391 N.E.2d 1352, 1354 (N.Y.1979). At least two federal courts sitting in New York have allowed claims for tuition reimbursement in

---

[2] "In deciding a motion to dismiss under Rule 12(b)(6), the court may refer 'to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.'" *Fishbein v. Miranda*, 670 F. Supp. 2d 264, 271 (S.D.N.Y. 2009) (quoting *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).

3

connection with COVID-19 related campus closures to proceed. *See Ford v. Rensselaer Polytechnic Inst.*, 2020 WL 7389155, at *5–6 (N.D.N.Y. Dec. 16, 2020) (allowing claims "seeking recompense" for tuition to go forward); *see also Hassan v. Fordham University*, 2021 WL 293255, at *3 (S.D.N.Y. Jan. 1, 2021) (allowing similar claims to go forward where claim was "grounded in whether an alleged promise for educational services was made and breached.").

## A. The Educational Malpractice Doctrine

It is well-settled that courts have a "'restricted role' in dealing with and reviewing controversies involving colleges and universities." *Radin v. Albert Einstein Coll. of Med. Of Yeshiva Univ.*, 2005 WL 1214281, at *10 (S.D.N.Y. 2005) (quoting *Maas v. Cornell Univ.*, 94 N.Y.2d 87, 92 (1999)). This limited judicial role "is grounded in the view that in matters wholly internal these institutions are peculiarly capable of making the decisions which are necessary to their continued existence." *Gertler v. Goodgold*, 107 A.D.2d 481, 485–486 (1st Dep't 1985), *aff'd* 66 N.Y.2d 946 (1985). Thus, claims which ask courts to evaluate whether "the school breached its agreement to provide an effective education," "evaluate the course of instruction," or "review the soundness" of teaching methods should be dismissed. *Ansari v. New York Univ.*, 1997 WL 257473, at *3 (S.D.N.Y. May 16, 1997) (citing *Paladino v. Adelphi Univ.*, 89 A.D.2d 85, 89–90 (2d Dep't 1982).

But the educational malpractice doctrine does not foreclose all lawsuits by students. *Id.* When the essence of the complaint moves beyond the effectiveness of education and into more specific promises for specified services, a student may be able to sue for breach of contract. *Id.* For example, "if the contract with the school were to provide for certain specified services, such as [ ] a designated number of hours of instruction, and the school failed to meet its obligation, then

4

a contract action with appropriate consequential damages might be viable." *Paladino*, 89 A.D.2d at 92.

## B. The Allegations in the Complaint Pertain to an Alleged Promise to Provide In-Person Instruction.

NYU argues that the Plaintiff's claims should be dismissed under the educational malpractice doctrine because Plaintiff's Complaint asks "the Court to evaluate whether NYU made the right decision to transition to remote learning and . . . to examine whether individual faculty members failed to provide an effective education" via an online teaching method. (Def. MTD Mem. at 7.) Plaintiff asserts that his claims are not for educational malpractice, but rather concern "the enforcement of NYU's own contractual bargain with its students." (Mem. of Law in Opp'n. to Def.'s Motion to Dismiss ("Pl. Opp'n Mem."), ECF No. 39, at 3.)

Plaintiff's claims are not barred by the educational malpractice doctrine because they are sufficiently grounded in contract (i.e. whether an alleged promise for educational services was made and subsequently breached.) The Complaint, at least partially, focuses on statements made by NYU in "marketing and recruitment materials" and a course description, which serve as the basis of the contractual relationship between the university and its students. (Compl. ¶¶ 12, 13.) The Complaint alleges that these documents show NYU promised "classroom instruction." (Compl. ¶ 20.) Ascertaining the meaning of these materials is an exercise in contract interpretation, which is the province of this Court, and does not require the questioning of the academic judgments of educational professionals. *See Deen v. New Sch. Univ.*, 2007 WL 1032295, at *2 (S.D.N.Y 2007) ("The interpretation of a university's catalog, like the interpretation of any contract, is a matter of law for the Court.")

The Court is mindful of the multiple allegations in the Complaint that allege that online education is "less valuable" and that "online education . . . is not equivalent in nature or value to

5

[] traditional in-classroom on-campus education . . . ." (Compl. ¶¶ 14, 25, 27.) However, Plaintiff's claims do "not require an evaluation of uniquely professional academic decisions such as the adequacy of courses" after moving to remote online instruction. *Ansari*, 1997 WL 257473, at *3. Plaintiff's claims can be evaluated in the context of whether NYU promised to provide in-person, on-campus instruction and failed to do so.

## IV. PLAINTIFF DOES NOT ADEQUATELY PLEAD A BREACH OF CONTRACT

To establish a breach of contract claim, a plaintiff must show: "(1) the existence of an agreement, (2) adequate performance of the contract by plaintiff, (3) breach of contract by the defendant, and (4) damages." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004). In New York, there is an implied contract between universities and their students. *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 206 (S.D.N.Y. 1998). This implied contract is straightforward: "if the student complies with the terms prescribed by the university and completes the required courses, the university must award [the student] a degree." *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 93 (2d Cir. 2011). The terms of this contract are "contained in the university's bulletins, circulars and regulations made available to the student." *Id.*

While this contractual relationship may allow a student to seek redress for alleged breaches by the university, it does not "provide judicial recourse for every disgruntled student." *Gally*, 22 F. Supp. 2d at 207. In the context of the student-university implied contract, "a student must identify specifically designated and discrete promises." *Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 370 (S.D.N.Y. 2016) (internal quotations and citations omitted); *see also Baldridge v. State*, 293 A.D.2d 941, 943, (3d Dep't 2002) (citing *Paladino*, 89 A.D.2d at 92) (stating that "a cause of action for breach of contract . . . requires a contract which provides for 'certain specified

6

services.'"). Reliance on "[g]eneral policy statements" or "broad and unspecified procedures and guidelines" will not suffice. *Ward v. New York Univ.*, 2000 WL 1448641, at *4 (S.D.N.Y. 2000). Thus, a court's review of contractual claims is "circumscribed to enforcing specific promises." *Ford*, 2020 WL 7389155, at *3.

Here, the alleged promise is that NYU would provide "on-campus in-classroom instruction" or an "in-person teaching experience." (Compl. ¶¶ 1, 4, 12.) NYU argues that Plaintiff has failed to sufficiently specify the contractual promises he seeks to enforce. (Def. MTD Mem. at 13.) NYU is correct.

Plaintiff's Complaint identifies "marketing and recruitment materials" and a course description as the source of NYU's promise to provide students with in-person instruction. (Compl. ¶¶ 12, 13.) Specifically, Plaintiff notes that under a heading titled "Networking" the website of NYU's Shack Institute of Real Estate ("Shack") listed "Direct engagement with industry, through the nation's leading conferences, regular speakers, internships, and more." (*Id.* ¶ 12, Ex. A.) Plaintiff claims that these statements show NYU touting the benefits of "in-classroom in-person teaching." (*Id.* ¶ 12.) Similarly, Plaintiff describes his real estate coursework, which was supposed to "include visits to Paris and Amsterdam to survey actual real estate properties." (*Id.* ¶ 13.) These visits took place virtually instead of physically traveling to Europe. (*Id.*) Notably, Plaintiff does not point to any course catalog or website where this course description allegedly appeared.

NYU's alleged statements do not rise to the level of a specific promise to provide in-person educational services. Plaintiff does not point to any express language promising the "certain specified service" of in-person classes. *Baldridge*, 293 A.D.2d at 943. Moreover, Plaintiff has not pointed to any express language that demonstrates NYU "relinquished its authority" to alter the

7

method of academic instruction. Indeed, throughout the pandemic, universities and other organizations have continued to hold major conferences, arrange speaking engagements, and offer internships via remote formats.[3]

Since the conclusion of briefing, Plaintiff has kept the Court informed of recent decisions he believes support his position. (Second Notice of Supp. Auth., ECF No. 60.) Plaintiff relies on *Ford v. Rensselaer Polytechnic Institute* and *Bergeron v. Rochester Institute of Technology*. (*Id.* at 1.) In both cases, the courts held that plaintiffs had alleged specific promises to provide in-person educational programs. *See Ford*, 2020 WL 7389155, at *5–6; *Bergeron*, 2020 WL 7486682, at *7–8.

In *Ford*, the district court for the Northern District of New York analyzed specific statements contained in university publications regarding a "'Clustered Learning, Advocacy, and Support for Students' ('CLASS')" plan, which was "built around a time-based clustering and residential commons program" and, "[t]o help facilitate CLASS, [the university] mandates that all first- and second-year students, as well as transfer students live on campus." 2020 WL 7389155, at *1. The court further found that the defendant university had "hammered repeatedly on the benefits of the [CLASS program] in an assortment of circulars and even in its catalog." *Id.* at 4–5. Similarly, in *Bergeron*, the Western District of New York was presented with specific statements regarding the "'opportunity to work directly with faculty members in their labs to investigate, explore, and . . . learn hands-on skills that become the foundation of scientific research,'" and "'access to some of the finest laboratories, technology and computing facilities

---

[3] Similarly, none of the statements Plaintiff points to regarding other schools within NYU allege an express promise by NYU to provide in-person instruction. (Compl. ¶¶ 14–19.) Moreover, none of the purported student comments listed in the Complaint allege an express promise or statement by NYU to provide in-person instruction, rather they are simply a list of grievances made by dissatisfied students. (Compl. ¶ 23, subparts a-z.); *see also Gally*, 22 F. Supp. 2d at 207 (noting that judicial recourse is not available "for every disgruntled student.")

8

available on any university campus.'" 2020 WL 7486682, at *1–2, *8. These cases are too factually dissimilar to be persuasive. The NYU statements identified by Plaintiff simply do not rise to this level of detail regarding promises for in-person instruction.

Plaintiff also contends that the parties' "conduct" defined the terms of their implied contract. (Compl. ¶ 39.) Specifically, Plaintiff argues that because Shack offers some courses fully online his decision not to select the online offering leads to the "natural consequence" of NYU agreeing to provide in-person instruction. (Pl. Opp'n Mem. at 14.) This argument is unavailing. Breach of contract actions between a student and a university "must be grounded in a text" and may not be inferred from the conduct of the parties. *Ford*, 2020 WL 7389155, at *4. The presentation of different instruction options is not an express promise that NYU will be limited in the future from changing instruction modalities. At most this is an "an implied promise" based on the nature of Plaintiff's dealings with the school," which "does not withstand scrutiny." *Id*. Moreover, this argument is blunted by Plaintiff's voluntary election to enroll in online courses during the 2020 Summer session with the knowledge that those courses would be conducted remotely. (Tr. of Oral Argument ("Oral Arg. Tr."), dated January 21, 2021, ECF No. 65, 4:24–9:18.)

## V.  PLAINTIFF'S QUASI-CONTRACT CLAIMS ARE DISMISSED

In addition to breach of contract, Plaintiff also bring two quasi-contract claims for unjust enrichment and money had and received. Because these claims are duplicative of Plaintiff's breach of contract claim they are dismissed.

### A. Unjust Enrichment

To state a claim for unjust enrichment, a plaintiff must (1) establish that the defendant was enriched, (2) at the plaintiff's expense, and (3) that equity and good conscience counsel against

9

defendant's retention of what the plaintiff seeks to recover. *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006). New York law does not permit recovery on a quasi-contract claim such as unjust enrichment if the parties have a valid, enforceable contract that governs the same subject matter as the quasi-contract claim. *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005); *see also Yalincak v. New York Univ.*, 2009 WL 10714654, at *14 (D. Conn. Sept. 3, 2009)(applying New York law and dismissing student's unjust enrichment claim because relationship was governed by an implied contract).

Here, it is undisputed that the parties have a valid contract that governs the relationship between NYU and its students. In support of his unjust enrichment claim, Plaintiff asserts that he, and the putative class members, "conveyed money to NYU in the form of tuition and fees for on-campus instruction and facilities that NYU did not provide and is not providing." (Compl. ¶ 52.) These are the same factual allegations underpinning Plaintiff's claim for breach of contract and Plaintiff offers no explanation as to how his unjust enrichment claim differs from his contract claim. *See Bytemark, Inc. v. Xerox Corp.*, 342 F. Supp. 3d 496, 512 (S.D.N.Y. 2018) (dismissing unjust enrichment claim where "based on the same factual allegations underlying" the plaintiff's contract and tort claims). Thus, Plaintiff's unjust enrichment claim is dismissed as duplicative.

### B. Money Had and Received

The elements for a money had and received claim are that "(1) defendant received money belonging to plaintiff; (2) defendant benefitted from the receipt of money; and (3) under principles of equity and good conscience, defendant should not be permitted to keep the money." *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat. Ass'n*, 731 F.2d 112, 125 (2d Cir. 1984). As with unjust enrichment, there is no claim for money had and received where a contract covers the

10

same subject matter for which relief is sought. *See Teachers Ins. & Annuity Ass'n v. Wometco Enters.*, 833 F. Supp. 344, 349 n.9 (S.D.N.Y. 1993) ("no claim for unjust enrichment/money had and received can stand where, as here, a contract covers the same subject matter for which relief is sought"). Plaintiff's relationship with NYU is contractual in nature, and the terms of the contract are well-established: if Plaintiff "complies with the terms prescribed by [NYU], [he] will obtain the degree [he] seeks." *Gally*, 22 F. Supp. 2d at 206. Therefore, as Plaintiff's relationship with NYU was governed by this contractual arrangement, Plaintiff's claim for money had and received fails.

## VI. LEAVE TO AMEND

Plaintiff indicated at oral argument that should his claims be denied, he intended to move for leave to file an amended complaint. (Oral Arg. Tr.116:2-12.) Federal Rule of Civil Procedure 15(a) provides that a district court may grant leave to amend "freely . . . when justice so requires." Fed. R. Civ. P. 15(a). *See also Perez v. 117 Ave. of the Ams. Food Corp.*, No. 15 Civ. 8151 (JPO), 2016 WL 5415090, at *1 (S.D.N.Y. Sept. 27, 2016) ("A district court has broad discretion in determining whether to grant leave to amend.") (citation omitted). Plaintiff may submit, by letter application, a proposed amended complaint if such amendment would not be futile. The letter application must be filed on or before April 1, 2021.

11

Case 1:20-cv-03645-GBD Document 70 Filed 03/17/21 Page 13 of 13

## VII. CONCLUSION

Defendant's motion to dismiss, (ECF No. 29), is GRANTED. The Clerk of Court is directed to close the motions accordingly.

Dated: New York, New York
      March 17, 2021

SO ORDERED.

*George B Daniels*

GEORGE B. DANIELS
United States District Judge